CENTER FOR DISABILITY ACCESS
Dennis Price, Esq., SBN 279082
Russell Handy, Esq. SBN 195058
Amanda Seabock, Esq. SBN 289900
Mail: 8033 Linda Vista Road Suite 200
San Diego CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Gilbert Salinas,**<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**Apple Ten SPE Capistrano, Inc.,** a California Corporation;<br>**Residence Inn By Marriott, LLC,** a Delaware Limited Liability Company; and Does 1-10,<br><br>　　　　Defendants. | Case No. 8:20-cv-02379-CJC-DFM<br><br>**Plaintiff's Responsive Brief Regarding Supplemental Jurisdiction**<br><br>Hon. Judge Cormac J. Carney |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 3

I. Introduction .................................................................................................. 1

    A. Plaintiff's claim under 28 CFR § 36.302(e) ......................................... 2

    B. AB 1521 and Construction Related Barriers ...................................... 3

    C. Construction-Related Accessibility Claims ........................................ 4

II. This history of *Gibbs* and the supplemental jurisdiction statute supports continued jurisdiction. ......................................................................................... 7

    A. The various District Court rationale are not supported by the California legislative intent. ........................................................................... 11

III. Plaintiff's State Law Damages and facts necessary to determine HFL status ................................................................................................................. 13

V. Conclusion .................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ............................................. 7

*Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) ............ 12

*Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*,
    24 F.3d 1545 (9th Cir. 1994) ........................................................... 7, 8, 9, 11

*Jankey v. Lee* (2012) 55 Cal. 4th 1038, 1049 ........................................................ 1

*Mageno v. Hodad's Foundation*, Superior Court of California, Los Angeles Case
    No. 19GDV01517 ............................................................................. 12

*Mageno v. South Philly Foods, Inc.*, Superior Court of Californa, Los Angeles Case
    No. 19GDCV01254 ........................................................................... 12

*Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898 .............................. 6

*Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104 ....... 5


**Statutes**

21 CCR § 132 ........................................................................................................ 6

*Cal Civ. Code § 55.3(2)* ........................................................................................ 4

*Cal. Civ. Code § 51(f)* ..................................................................................... 1, 4

*Cal. Civ. Code § 55.52* ..................................................................................... 4, 5

Cal. Civ. Code § 55.56(g)(1)(A) ............................................................................ 6

*Cal. Civ. Proc. § 425.55(a)(3)* ............................................................................. 4

*Cal. Civ. Proc. § 425.55(b)* .................................................................................. 4

**Other Authorities**

Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849 (1992)..................7

*Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708 (1991)..................8

Pub. L. No. 101-650, 104 Stat. 5089...................................................................8

## I. Introduction

The Americans with Disabilities Act ("ADA") was a landmark piece of legislation, heralded as a last step in the promise of equality made by the Civil Rights Acts of the 1960s.[1] That law provided plaintiffs an opportunity to seek injunctive relief as well as attorney's fees against non-complying businesses, but declined to create any public enforcement agency, instead relying on private enforcement. The law explicitly waived any preemption of state remedies, inviting states to enact additional penalties to aggrieved plaintiffs.[2] California amended the Unruh Civil Rights Act ("Unruh") to make any violation of a right under the ADA a violation of Unruh.[3]

The Center for Disability Access ("CDA") has been filing successful ADA claims on behalf of legitimate plaintiffs for over 20 years. CDA has filed in a variety of forums, but most frequently in the Central District of California. In late 2019, the Central District of California began systematically dismissing supplemental filed Unruh state claims in construction-related barrier cases on the basis that the plaintiffs were forum shopping and "evading" new state laws.[4] This has been done based on an interpretation of a variety of provisions that were implemented under California state law in AB 1521 designating certain claims involving

---

[1] Prematurely, given *Bostock v. Clayton County* (2020) 139 S. Ct. 1599
[2] *Jankey v. Lee* (2012) 55 Cal. 4th 1038, 1049.
[3] *Cal. Civ. Code § 51(f)*
[4] Ostensibly, the Courts are concerned with honoring California's interest in controlling construction-related serial litigation against private businesses by high-frequency litigants. However, the orders have gone beyond those bounds, including non-serial filers, policy claims, and claims against municipalities not contemplated by AB 1521.

1

"construction-related barriers" and "high-frequency litigants" an exceptional circumstance meriting dismissal.

While the present case invokes both the ADA and Unruh, it does not invoke a violation of a construction-related defect as defined under those state laws.

Rather than involving a construction-related defect, this case solely involves a policy matter concerning the *digital information* provided on Defendant's *website* that *describes* the accessibility features that are found (or not found) at the Marriott Hotel. As such, this case does not involve a construction-related accessibility claim, which means the claim is not subject to the "high frequency litigant" provision found in Cal. Civ. Proc. § 425.55(b).

Should this court be inclined to apply the same rationale to claims involving non-compliant websites, Plaintiff asks that this court suspend ruling on this matter until a decision issues in *Rosas* to avoid time and costs associated with potential motions to reconsider, as no prejudice will issue in suspending that decision, or alternatively to certify the decision for immediate appellate review, given the number of additional cases that this decision could affect and the case dispositive nature of a dismissal.

### A.     Plaintiff's claim under 28 CFR § 36.302(e)

The gravamen of Plaintiff's complaint, is that the Hotel's website does not contain enough information for him to be able to tell if the Hotel is compliant with the ADA. 28 CFR § 36.302(e)(1)(ii) requires a Hotel website to:

> Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with

disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

Here, Plaintiff visited the website in order to book a room. Dkt. 1, ¶ 15. He found that the website did not mention enough information regarding accessible room details for him to decide if the room was accessible or not. For example, the website did not mention if the desk/table was accessible, if the bedroom has compliant wheelchair paths of travel within it, and if the toilet had compliant transfer space next to it. Additionally, the photos that accompany the room descriptions states: "Images may not full represent the room features you booked." This means the photos are valueless towards helping Plaintiff decide if the room is accessible. Dkt. 1, ¶ 16. These are vital and basic bits of information anyone in a wheelchair would need in order to assess if the room is accessible. Here, Plaintiff could not assess if these *basic* accessibility features are accessible or not, which is a violation of the ADA. The important distinction here is that Plaintiff is not alleging any construction-related access barriers, like a narrow doorway or a lack of accessible parking. The barriers he encountered are found entirely on Defendant's <u>website</u>.

### B. AB 1521 and Construction Related Barriers

In 2015, California passed AB 1521, implementing a number of changes to state substantive laws and procedural rules involving a class of cases, specifically, construction-related accessibility ("CRA") claims. The

3

literal reading of those statutes, the legislative history relating to it, and other similar legislation do not contemplate policy or digital access claims (such as this one) within the CRA ambit.

Recognizing the unusual circumstances that lead to the law, the California legislature stated "the provisions of this section are warranted for this limited group of plaintiffs."[5] This should be read as a statement of intent that the statute is to be read narrowly and consistent with prior modifications to the law that consciously did not wholesale replace the application of Unruh to ADA plaintiffs. These plaintiffs are defined as "high-frequency litigants" filing cases pertaining to "construction-related accessibility."[6] CRA is not defined within this provision, or given direction on where to find such a definition; however, the term is defined and used consistently throughout a similar law, a narrowing provision of the Unruh Civil Rights Act ("Unruh") in *Cal. Civ. Code § 55.3-55.56 et. seq.*[7]

### C. Construction-Related Accessibility Claims

The Unruh Civil Rights Act provides for a $4,000 statutory penalty to any anyone who is a victim of "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990."[8] In a series of laws passed in the past 10 years, limiting provisions have been placed on a subset of these claims, most recently in 2015 with AB 1521.

> "Construction-related accessibility claim" means any claim of a violation of any construction-related accessibility standard, as defined by paragraph (6) of subdivision (a) of

---

[5] *Cal. Civ. Proc. § 425.55(a)(3)*
[6] *Cal. Civ. Proc. § 425.55(b)*
[7] *Cal Civ. Code § 55.3(2)*
[8] *Cal. Civ. Code § 51(f)*

4

> Section 55.52, with respect to a place of public accommodation. "Construction-related accessibility claim" does not include a claim of interference with housing within the meaning of paragraph (2) of subdivision (b) of Section 54.1, **or any claim of interference caused by something other than the construction-related accessibility condition of the property**, including, but not limited to, the conduct of any person.[9] (emphasis added)

In the underlined section, CRA is defined narrowly to exclude any claims not explicitly contained within the definition.

> (6) "Construction-related accessibility standard" means a provision, standard, or regulation under state or federal law requiring compliance with **standards for making new construction and existing facilities** accessible to persons with disabilities, including, but not limited to, any provision, standard, or regulation set forth in Section 51, 54, 54.1, or 55 of this code, Section 19955.5 of the Health and Safety Code, the California Building Standards Code (Title 24 of the California Code of Regulations), the federal Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.), and the federal Americans with Disabilities Act Accessibility Guidelines (Appendix A to Part 36 of Title 28 of the Code of Federal Regulations).[10] (emphasis added)

This above definition is cited as part of the definition of a CRA in § 55.3. This section makes clear that the context is claims relating to violations of established "standards" for new construction or existing facilities. Websites are not "facilities" or themselves "places of public

---

[9] *Id.*

[10] *Cal. Civ. Code* § 55.52

5

accommodation" under the ADA.[11] Websites do not have a published set of standards, but are rather covered under the ADA by a policy mandate to make services accessible.[12]

While "new construction" and "existing facilities"[13] are not defined by state law, context can be found in the protections afforded to defendants by these sections. Within *Cal. Civ. Code* § 55.56, the full context of this provision can be seen. This statute provides for reduced damages where a facility is inspected by a Certified Access Specialist.[14] ("CASp") CASps are individuals licensed by the state based on a rigid set of criteria related to experience in *architecture*.[15] There is no provision to obtain this licensing on the basis of website design or any digital experience; it is solely based on architectural experience or the functional equivalent, such as building inspection.[16] The section goes further to contemplate that damages could be reduced by obtaining building permits,[17] which are irrelevant to issues of website access.

---

[11] *Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104, 1114.
[12] *Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898, 904.
[13] It should be noted that under Ninth Circuit law, a website is explicitly not considered a "place" but is rather a service of a "place of public accommodation." Thus any interpretation that places a website within this statute would be incongruent with Ninth Circuit law regarding the way into which websites are construed under the ADA.
[14] Cal. Civ. Code § 55.56(g)(1)(A)
[15] 21 CCR § 132
[16] *Id.*
[17] Cal. Civ. Code § 55.56(g)(1)(C)

## II. This history of *Gibbs* and the supplemental jurisdiction statute supports continued jurisdiction.

Under *Gibbs, Carnegie-Mellon*,[18] and other Supreme Court decisions decided prior to 1990, district courts enjoyed wide flexibility and discretion regarding the exercise of (then) pendent jurisdiction, able to invoke an ever-growing and non-exhaustive list of factors (economy, convenience, fairness, comity, abstention, novelty, complexity, unsettled law, etc.) that the court could consider when deciding whether to exercise supplemental jurisdiction. As the Ninth Circuit explains, the *Gibbs* doctrine of flexibility "led a number of courts to decline pendent jurisdiction in situations not mentioned specifically in *Gibbs*."[19]

But this "very flexibility" led to the "doctrine's most severe criticism."[20] The flexibility and discretion enjoyed by the district courts often led to abuse: "many district courts in the past were hostile to pendent jurisdiction in civil rights cases and used their broad discretion to dismiss supplemental claims, often under the guise of efficiency and fairness."[21] This concern, in fact, was voiced by one of the principle drafters of the abrogating statute, section 1367, Prof. Thomas Mengler, who expressed trepidation at permitting courts to dismiss state law claims when they

---

[18] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).
[19] *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1553 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).
[20] *Executive Software*, 24 F.3d at 1554.
[21] Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 993 (1992)

"predominated" given the abuses by a number of district courts with respect to civil rights cases.[22]

Thus, the Federal Court Study Committee made an express recommendation to Congress that a supplemental jurisdiction statute be enacted, leading to the Judicial Improvements Act of 1990[23] and the enacting of the supplemental jurisdiction statute found at 28 U.S.C. § 1367.

Section 1367(a) states that district courts "*shall* have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy..."[24] Thus, concluded the Ninth Circuit, the statute speaks in "mandatory terms."[25] This means that "unless a court properly invokes a section 1367(c) category ... supplemental jurisdiction *must be asserted*."[26] The "consequence of the statutory structure," therefore "changes the nature of the *Gibbs* discretionary inquiry."[27]

The district court still enjoys discretion, but such discretion is to be exercised only *after* one of the four statutory bases are found. "Congress intended the exercise of discretion to be *triggered* by the court's identification of a factual predicate that corresponds to one of the section

---

[22] *Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708 (1991) (the letter of Prof. Thomas M. Mengler).
[23] Pub. L. No. 101-650, 104 Stat. 5089.
[24] *Executive Software*, 24 F.3d at 1555 (emphasis in original).
[25] *Executive Software*, 24 F.3d at 1555.
[26] *Executive Software*, 24 F.3d at 1556 (emphasis added).
[27] *Executive Software*, 24 F.3d at 1556.

1367(c) categories."[28] As the Ninth Circuit notes, it is only after the factual predicate exists that the district court then exercises discretion when applying the *Gibbs* factors. "Once that factual predicate is identified, the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comport with . . . the values of economy, convenience, fairness, and comity."[29]

Thus, when the various courts cite to *Gibbs* for the proposition that supplemental jurisdiction "*is a doctrine of discretion, not of plaintiff's right*,"—is no longer accurate. With the creation of the statute, there is now a two-step process. First, the district court must identify the "factual predicate that corresponds to one of the section 1367(c) categories" and then (and only then) the court must still determine that its decision "comports with the underlying objective" of "accommodating the values of economy, convenience, fairness, and comity."[30] If a district court does not properly identify a factual predicate corresponding with one of the four bases enumerated in § 1367(c), then a plaintiff does have a *right* to supplemental jurisdiction.

*First*, the circumstances must be exceptional, and *second*, that there must be compelling reasons to justify dismissal.[31] In the numerous orders to show cause and rulings declining supplemental jurisdiction on Unruh claims, courts seldom identify which of the 1367(c) bases it is relying upon to decline to exercise supplemental jurisdiction. However, 28 § 1367(c)(4) is most often cited as allowing a court to decline jurisdiction when a case

---

[28] *Executive Software*, 24 F.3d at 1557 (emphasis added).
[29] *Executive Software*, 24 F.3d at 1557.
[30] *Executive Software*, 24 F.3d at 1557.
[31] *Executive Software North America, Inc.* (9th Cir. 1994) 24 F.3d 1545, 1558

9

presents "exceptional circumstances." Here, the circumstances that are apparently presented are: Plaintiff has elected to avoid state court procedures. This is not exceptional. In virtually every case that is filed in federal court, the plaintiff has elected to file there instead of state court, as only a small fraction of cases are required to be filed solely in federal jurisdiction. It is not exceptional that a plaintiff would avail himself of supplemental jurisdiction, as it is expressly authorized under federal law.

*Executive Software* contemplated this circumstance, suggesting that compelling rationale is separate from exceptional circumstances, and that while there may be circumstances where a common fact satisfies both, "exceptionality" is a prerequisite.[32] "A court simply must articulate *why the circumstances of the case are exceptional* **in addition to** inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction."[33] The court makes plain that the compelling reasons cannot obviate the first prong: "To deprive "in exceptional circumstances" of all meaning would unnecessarily conflate distinct statutory terms, a result that we are reluctant to embrace."[34]

It cannot both be true that Unruh claims are pervasive in the Central District, a dominant share of the court's docket, and that this is also an exceptional circumstance. While Plaintiff grants that the court is exceptionally understaffed, the Ninth Circuit has made clear that that is not a permissible rationale for withholding jurisdiction. As a result, dismissal under 1367(c)(4) is simply improper.

---

[32] *Id.*

[33] *Id.* (emphasis added)

[34] *Id.*

### A. The various District Court rationale are not supported by the California legislative intent.

While this matter was originally filed in state court, and was removed by Defendants, it should be noted that the Plaintiff's claims are unquestionably properly venued in this District Court. The ADA claim is a federal right of action conferring standing on the Plaintiff and he is within his rights to bring all related claims in the same lawsuit. Jurisdiction over those state law claims is mandatory.[35] Dismissal over the state claims is only proper once certain criteria are met, and then it is discretionary, rather than mandatory. The only rationale that allows for dismissal of the Plaintiff's state law claims are "compelling or exceptional circumstances."

Notwithstanding the above, numerous judges have decided that (at least with respect to construction-related access claims) the imputed interest of the state of California invites dismissing supplemental jurisdiction under this "compelling or exceptional circumstances" prong. As far as present counsel is aware, no court has asked the state of California to weigh in on this belief, however, the various courts' orders indicate that this rationale is persuasive.

### 1. *Request for the Court to seek amicus briefing on the issue from the State of California*

While Plaintiff is unaware of any binding authority interpreting "construction-related access" in the context that would be required for a dismissal contemplated by the order issued by this court, this has been addressed by at least two California state court decisions, each

---

[35] *Exec. Software North America v. U.S Dist. Court for Cent. Dist. of California* (9th Cir. 1994) 24 F.3d 1545, 1555 (overruled on other grounds)

unequivocal that a website claim does not qualify.[36] Additionally, at least one Central District judge faced with this decision agreed.[37] Should this court disagree with the rationale of Judges Hofer, Kim and Anderson, this Court should invite briefing on the issue from an agent of the state of California. The state of California should have the opportunity to weigh in on any issues regarding the interest of the state of California regarding the claims that would be re-filed in state court.

Plaintiff requests that the court ask the Attorney General to file a brief on the questions posed by the court concerning the imputed interest stated by numerous District Judges in the Central District of California of the state of California's desire in having all Unruh/ADA litigation filed in the California Superior Courts. That brief should address the following in order for the court to implement the will of the state of California:

- Are website cases "constructed-related accessibility claims" as defined by state law?
- Does the State of California have a stated preference to

---

[36] *Mageno v. South Philly Foods, Inc.,* Superior Court of Californa, Los Angeles Case No. 19GDCV01254 (Order dated June 26, 2020 adopting tentative as ruling of the court find that website claims are excluded by Cal. Civ. Code § 55.3(a)(2).) (Ruling attached as Exhibit 1); *Mageno v. Hodad's Foundation,* Superior Court of California, Los Angeles Case No. 19GDV01517 (*Minute Order* dated March 16, 2020).

[37] On May 20, 2020, Judge Percy Anderson discharged an Order to Show Cause finding that a website claim under Unruh is not a construction-related accessibility claim. "Because this action involves allegations concerning the accessibility of a website, and therefore is not a construction-related accessibility claim, the Court hereby discharges the Order to Show Cause." *Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) (Dkt. No. 12).

"curtail"[38] or otherwise limit legitimate Unruh Civil Rights Act filings based on a violation of the ADA?
- Was the $1,000 fee levied on plaintiffs intended to deter filings, or instead to support those claims that are filed in the state courts?
- If the Central District scheme is successful in redirecting all Unruh claims to the Superior Courts, are the Los Angeles County courts able to handle the nearly 2,000 additional cases annually that have been filed under the ADA in the Central District of California, including fulfilling the Early Evaluation Conference hearings contemplated under state law?[39]
- Is the "high-frequency litigant" designation intended to count cases originally filed in Federal court in the total?
- Did the state anticipate the requirements of state procedure applying in federally filed cases?

Concerns of comity abound in the various orders issuing from the Central District, however it would appear that the court is projecting its own interpretation of what the state of California wants without actually asking.

### III. Plaintiff's State Law Damages and facts necessary to determine HFL status

Plaintiff is seeking only minimum statutory penalties associated with violations of the Unruh civil rights act, up to $4,000 each for each

---

[38] Exhibit 3, pg 1.
[39] Exhibit 3, pg 5

13

occurrence or incident of deterrence. These claims are entirely predicated on ADA violations.

Plaintiff concedes that if this matter were treated as a CRA he is a high-frequently litigant as defined by that statute. However, this matter does not concern a CRA claim and thus the question is not irrelevant, as if the claim were to be refiled in state court he would not be subject to any heightened filing fee.

## V. Conclusion

Plaintiff direct filed his matter in state court. Defendants have now removed the case to federal court. Dismissal of Plaintiff's state law claims would force this matter to be litigated in two forums due to actions completely out of the control of Plaintiff. This is inefficient, could lead to inconsistent rulings and would do nothing to affect "forum shopping" concerns typically levied by Defendants and courts in ADA claims as Plaintiff is not responsible for this matter pending in federal court.

Should the court be inclined to dismiss the state law claims, Plaintiff asks that the decision be stayed pending the outcome in *Rosas* or allow an immediately certification for interlocutory appeal.

Dated: January 6, 2021                    CENTER FOR DISABILITY ACCESS

By: /s/ Dennis Price
Dennis Price
Attorneys for Plaintiff